## McChesney *v.* Guernsey, Appellant.

*Promissory note—Bills of exchange—Presentment for payment— Fraud—Burden of proof—Evidence.*

In an action by an endorsee against the acceptor of a draft, it is not necessary to show presentment for payment in order to charge the defendant inasmuch as he is primarily liable.

In such a case the defendant is entitled to show that the payee negotiated it under such circumstances as amounted to a fraud upon the acceptor, and the burden of proof is then thrown upon the endorsee to show that he took the note in due course for a valuable consideration and without knowledge of the fraud.

Where a person accepts a draft under a promise on the part of the payee that the draft will not be negotiated, and would only be used for a designated purpose, a subsequent violation of the agreement is a fraud upon the rights of the acceptor and will relieve him from liability on the draft as against the payee, or any one who takes it with knowledge of the fraud.

Argued March 8, 1915. Appeal, No. 11, March T., 1915, by defendant, from judgment of C. P. Lackawanna Co., March T., 1908, No. 815, on verdict for plaintiff in case of W. J. McChesney, et al., Executors of J. C. Cochran, deceased, v. J. W. Guernsey. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Reversed.

Assumpsit on drafts. Before Newcomb, J.

At the trial the defendant made the following offer:

The counsel for the defendant offers to prove by the witnesses on the stand that she was present at the time

these drafts were signed; that the day before these drafts were presented to the defendants to be signed by him a man came to his store saying that he represented the Providence Jewelry Company, that he had a package of jewelry which he wanted to consign to the defendant upon certain conditions, and the next day he came in again and told the defendant he had in his possession a box of jewelry belonging to the Providence Jewelry Company, whom he represented, and that if the defendant would take the box of jewelry in his possession and put them on sale in his store that an agent would come here and spend a considerable time introducing the jewelry in the market and help to create a demand for it and to make sales of it, and he at that time asked the defendant to sign these drafts, stating that they were merely a memoranda for the use of the firm and would not pass out of the hands of the firm; that they were not to be paid only as sales of jewelry were actually made, and that if at any time Mr. Guernsey desired to ship the jewelry he should have the privilege of doing so and the drafts would be thereupon returned to him. The defendant, upon the faith and credit of these representations, allowed the box of jewelry to be placed in the store, and signed the drafts.

We propose to show that the agent did not come here and help introduce the goods into the market, that he never returned here; that the box of jewelry was never opened by the defendant, that a few days afterwards as the agent did not come he wrote a letter to the Providence Jewelry Company stating the conditions and agreements upon which the goods had been left with him were not complied with and that he was ready to ship them back, to which he received no reply, and that the box containing the alleged jewelry has remained unopened in his store ever since that time subject to the demand of the plaintiff.

Objection: The offer is objected to as immaterial, irrelevant and incompetent.

Ruling: The objection is sustained. Exception noted for the defendant. (1)

The court charged as follows:

The suit is founded upon a series of negotiable instruments, not in the hands of the original party to whom Mr. Guernsey gave them, but in the hands of a third party, and it is a peculiar characteristic of negotiable paper like a draft or check that it passes from hand to hand without any ifs or ands and without any luggage at all, just like currency, so that no matter what defense one might have as against the original party to whom it was given, when that negotiable paper gets into the hands of a third party it is free, free from any defense unless he take it under circumstances to put him upon suspicion. And the presumption of law is that a holder who comes into court and has in his possession such a draft, such a check or such a bank note, took it in the ordinary course of business, and therefore free from any dispute that might arise between the original parties to it. In order to defeat his recovery the maker or acceptor has the burden of showing that the present holder took it under circumstances of suspicion, and in the absence of any proof of that kind, here I feel constrained to say to you that no matter though Mr. Guernsey may have been imposed upon by the man with whom he dealt, no matter how much he may have been stung, that, so far as the present showing goes, the executors of Mr. Cochran who are now here suing on these drafts are entitled to recover. A very great judge in this State has described a negotiable instrument as a "traveler without luggage," and when it passes from hand to hand without any notice of any equity the original maker may have, that holder is entitled to the fact of the instrument and any interest that may have accrued upon it.

There are four drafts here each in the sum of $80.50, therefore aggregating $322.00. The interest has been accumulating since 1907, and it amounts to nearly $130.00 now, so that your verdict will have to be taken in favor

of the plaintiff in the aggregate amount, both principal and interest, of $457.58. The clerk will take your verdict accordingly.

Verdict and judgment for plaintiff for $451.58. Defendant appealed.

*Errors assigned* were (1) ruling on evidence quoting the bill of exceptions; (2, 4). above instructions, and (5) in holding that plaintiff was not required to prove a demand for payment.

*A. A. Vosburg,* for appellant.—Upon proof of fraud in the execution of a note, the burden shifts to the holder to show good faith and consideration: Howie v. Lewis, 14 Pa. Superior Ct. 232; Merchants, Etc., Bank v. Pizor, 24 Pa. C. C. R. 273; Loeb v. Mellinger, 12 Pa. Superior Ct. 592; Real Est. Investment Co. v. Russell, 148 Pa. 496.

*T. A. Donahoe,* with him *F. J. Helriegel* and *P. C. Foley,* for appellee.

OPINION BY RICE, P. J., December 20, 1915:

This was an action of assumpsit by an endorsee against the acceptor of four drafts. Being the person primarily liable, presentment for payment was not necessary to charge him: Section 70, Act May 16, 1901, P. L. 204.

As the evidence stood when the case was closed the court was right in giving binding direction for the plaintiff. But we think there was error in rejecting the defendant's offer of evidence embraced in the first assignment. The ground upon which the evidence was rejected was that it was immaterial, irrelevant, and incompetent. The learned trial judge did not give a reason for rejecting the evidence other than that stated in the objection, but the view that he took with regard to the case would seem to be expressed in this excerpt from his charge, which is quoted in the third assignment of

error: "And the presumption of law is that a holder who comes into court and has in his possession such a draft, such a check or such a bank note, took it in the ordinary course of business, and therefore free from any dispute that might arise between the original parties to it. In order to defeat his recovery the maker or acceptor has the burden of showing that the present holder took it under circumstances of suspicion, and in the absence of any proof of that kind here, I feel constrained to say to you that no matter though Mr. Guernsey may have been imposed upon by the man with whom he dealt, no matter how much he may have been stung, that; so far as the present showing goes, the executors of Mr. Cochran who are now here suing on these drafts are entitled to recover." If this is the correct view then there was no error in the rejection of the testimony embraced in the offer because it was not coupled with an offer to show notice to the plaintiff. But we cannot assent to this view of the law. The law upon the subject is thus expressed in Section 59 of the Act of 1901: "Every holder is deemed, prima facie, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course." It is thus seen that if the facts alleged together with the inference which a jury could legitimately deduce from them would establish the defectiveness of the endorser's title, proof of those facts was both relevant and material because, if satisfactory to the jury, the burden would be cast on the plaintiff. As pointed out in many cases a party has a right to prove any fact relevant to the issue if proof of that fact will shift the burden of proof. Recurring to the Act of 1901, it will be seen that the title of a person who negotiates an instrument is defective within the meaning of the act under several conditions and amongst these when he obtained the instrument or any signature thereto by fraud or other unlawful .

means or when he negotiates it in breach of faith or under such circumstances as amount to a fraud. It is to be observed that we are dealing with an offer of evidence and not with a special plea and, therefore, we cannot agree that the offer was properly rejected because it was not distinctly alleged that a fraud was intended or committed. The question is whether the facts together with the inferences legitimately deducible therefrom would constitute a fraud, and upon that point we entertain no doubt. We do not deem it necessary to elaborate that subject nor to quote verbatim or paraphrase the offer. This will appear in the report of the case and if the defendant can establish all of the facts alleged we think a case would be made out which would shift to the plaintiff the burden of proof as above stated. It is as much a fraud to obtain a paper for one purpose and use it for a different and unfair purpose, as to obtain it by fraudulent statements. Applying the principle that a party is presumed to contemplate the natural consequences of his own act, it would require no straining to say that not only would a fraud be perpetrated if the scheme under which the defendant was induced to sign these papers is carried out but also that a fraud was actually intended. The case may present an entirely different aspect when the evidence is in and the plaintiff has been given an opportunity to rebut it. All that we decide is that the defendant should be given an opportunity to prove the facts alleged in the offer.

The second assignment of error is sustained, the judgment is reversed, and a venire facias de novo is awarded.